## FEDERAL LAND BANK OF ST. PAUL v. BISMARCK LUMBER CO. ET AL.

No. 76. Argued October 23, 1941.—Decided November 10, 1941.

*Mr. Warner W. Gardner,* with whom *Assistant Solicitor General Fahy* and *Messrs. Mastin G. White, Robert K. McConnaughey,* and *Russell D. Burchard* were on the brief, for petitioner.

*Mr. P. O. Sathre,* Assistant Attorney General of North Dakota, with whom *Mr. Alvin C. Strutz,* Attorney General, was on the brief, for respondents.

Mr. Justice Murphy delivered the opinion of the Court.

We are asked to decide whether, in view of § 26 of the Federal Farm Loan Act of July 17, 1916 (c. 245, 39 Stat. 360, 380; 12 U. S. C. §§ 931–933),[1] petitioner is subject to

---

[1] "Sec. 26. That every Federal land bank and every national farm loan association, including the capital and reserve or surplus therein and the income derived therefrom, shall be exempt from Federal, State, municipal, and local taxation, except taxes upon real estate held, pur-

the Sales Tax Act of North Dakota,[2] the pertinent sections of which are set forth in the margin.[3]

chased, or taken by said bank or association under the provisions of section eleven and section thirteen of this Act. First mortgages executed to Federal land banks, or to joint stock land banks, and farm loan bonds issued under the provisions of this Act, shall be deemed and held to be instrumentalities of the Government of the United States, and as such they and the income derived therefrom shall be exempt from Federal, State, municipal, and local taxation.

"Nothing herein shall prevent the shares in any joint stock land bank from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the State within which the bank is located; but such assessment and taxation shall be in manner and subject to the conditions and limitations contained in section fifty-two hundred and nineteen of the Revised Statutes with reference to the shares of national banking associations.

"Nothing herein shall be construed to exempt the real property of Federal and joint stock land banks and national farm loan associations from either State, county, or municipal taxes, to the same extent, according to its value, as other real property is taxed."

[2] North Dakota Laws of 1937, c. 249.

[3] "§ 2. TAX IMPOSED. There is hereby imposed, beginning the first day of May, 1937, and ending June 30th, 1939, a tax of two per cent (2%) upon the gross receipts from all sales of tangible personal property, consisting of goods, wares, or merchandise, except as otherwise provided in this Act, sold at retail in the State of North Dakota to consumers or users; . . ." (Laws of 1939, c. 234, § 1, extends the period of the tax through June 30, 1941, and S. B. No. 40, approved March 14, 1941, extends the tax through June 30, 1943.)

"§ 3. EXEMPTIONS. There are hereby specifically exempted from the provisions of this Act and from computation of the amount of tax imposed by it, the following:

"(a) The gross receipts from sales of tangible personal property which this State is prohibited from taxing under the Constitution or laws of the United States or under the Constitution of this State. . . .

"§ 6. Retailers shall add the tax imposed under this Act, or the average equivalent thereof, to the sales price or charge and when added such taxes shall constitute a part of such price or charge, shall be a debt from consumer or user to retailer until paid, and shall be recoverable at law in the same manner as other debts. . . .

Petitioner, the Federal Land Bank of St. Paul, was created pursuant to the Federal Farm Loan Act, *supra*. In the course of its operations it acquired by foreclosure proceedings certain farm properties in Burleigh County, North Dakota.[4] To effect necessary repairs and improvements to the buildings and fences on these properties, petitioner purchased lumber and other building materials of an aggregate value of $408.26 from the Bismarck Lumber Company, a retail dealer. The Lumber Company demanded the sum of $8.02 from petitioner, representing the total amount of the state sales tax on the various purchases. This, petitioner refused to pay. On March 9, 1938, petitioner filed a complaint in the District Court of Burleigh County against the Lumber Company and the State Tax Commissioner,[5] alleging the foregoing facts and praying for an adjudication of non-liability for the sales tax on the ground that petitioner is exempt under § 26 of the Federal Farm Loan Act, *supra*, and the federal Constitution. To this complaint respondents demurred. In sustaining the demurrer the trial court held that the sales to petitioner were subject to the tax, that the Lumber Company was required to collect the tax, and that petitioner was under a legal duty to pay it. Accordingly,

"§ 7. UNLAWFUL ACTS. It shall be unlawful for any retailer to advertise or hold out or state to the public or to any consumer, directly or indirectly, that the tax or any part thereof imposed by this Act will be assumed or absorbed by the retailer or that it will not be considered as an element in the price to the consumer, or if added, that it or any part thereof will be refunded."

[4] Section 13 of the Federal Farm Loan Act (39 Stat. 360, 372) gives federal land banks the power "To acquire and dispose of . . . Parcels of land acquired in satisfaction of debts or purchased at sales under judgments, decrees, or mortgages held by it."

[5] Owen T. Owen was named as the original defendant. He resigned the office of Tax Commissioner on December 26, 1938. His successor, respondent Gray, who took office on May 18, 1939, was substituted by order of this Court on May 26, 1941.

judgment was entered against petitioner in the amount of the tax. The Supreme Court of North Dakota affirmed the judgment of the trial court. *Federal Land Bank* v. *Bismarck Lumber Co.*, 70 N. D. 607, 297 N. W. 42. The case is here because it presents a question of importance in the administration of the Federal Farm Loan Act.

We are confronted with two questions:

*First.* Does § 26 include within its ban a state sales tax such as this? We hold that it does.

*Second.* Can Congress constitutionally immunize from state taxation activities in furtherance of the lending functions of federal land banks? We hold that it can.

I. It is clear that the North Dakota statute makes the purchaser, petitioner here, liable for the sales tax. Section 6 of the Act requires the retailer to add the tax to the sales price and declares the tax to be a debt from the consumer to the retailer. Section 7 makes it unlawful for the retailer to hold out that he will absorb or refund the tax in whole or in part. The Supreme Court of North Dakota has held that the sales tax is laid upon the purchaser. *Jewel Tea Co.* v. *State Tax Commissioner*, 70 N. D. 229, 293 N.W. 386. This holding was reaffirmed in the decision below. These determinations of the incidence of the tax by the state court are controlling, and respondents concede the point.

The unqualified term "taxation" used in § 26 clearly encompasses within its scope a sales tax such as the instant one, and this conclusion is confirmed by the structure of the section. In reaching an opposite conclusion the court below ignored the plain language, "That every Federal land bank . . . shall be exempt from Federal, State, municipal, and local taxation," and seized upon the phrase, "including the capital and reserve or surplus therein and the income derived therefrom," as delimiting the scope of the exemption. The protection of § 26 cannot thus be frittered away. We recently had occasion, under other

circumstances, to point out that the term "including" is not one of all-embracing definition, but connotes simply an illustrative application of the general principle. *Phelps Dodge Corp.* v. *Labor Board,* 313 U. S. 177, 189; see also *Helvering* v. *Morgan's, Inc.,* 293 U. S. 121, 125. If the broad exemption accorded to "every Federal land bank" were limited to the specific illustrations mentioned in the participial phrase introduced by "including," there would have been no necessity to except from the purview of § 26 the real estate held by the land banks.

The additional exemptions granted to farm loan bonds and first mortgages executed to the land banks are proper additions to the general exemption of § 26. The bonds may be held by private persons, and, of course, the general exemption of § 26 would not extend to them. Likewise, the general exemption would protect mortgages executed to the land banks and held by them, but it would not survive a transfer.

Nothing in the legislative history of § 26 commands a contrary result; [6] and a broad construction is indicated by Congress's intention to advance credit to farm borrowers at the lowest possible interest rate. The legislative history of similar exemption clauses in other statutes supports our interpretation of § 26.[7]

---

[6] The committee reports emphasize the tax exempt character of the farm loan bonds. S. Rpt. No. 144, 64th Cong., 1st Sess., p. 7; H. Rpt. No. 630, 64th Cong., 1st Sess., p. 8; H. R. Doc. No. 494, 64th Cong., 1st Sess., p. 11. The lengthy debates in the Senate over the constitutionality of § 26 may be explainable in part on the ground that the broad exemption thereby created would deprive the States of a large source of potential revenue. See 53 Cong. Rec. 6851–6854, 6961–6970, 7245–7247, 7305–7318, 7372–7378.

[7] Most enlightening is the recent amendment (Act of June 10, 1941, c. 190, 55 Stat. 248) to § 10 of the Reconstruction Finance Corporation Act (47 Stat. 5, 9), which declares that exemption includes sales taxes. The committee reports make it clear that Congress sought only to confirm its original understanding of the scope of the exemption by

It cannot be seriously contended that the tax falls within the real estate exception to § 26. Obviously, a tax upon the sale of building materials to be used on the real estate of a federal land bank is not a tax upon that real estate.

'II. The principal argument of respondents, and the major ground of the decision below, is that Congress cannot constitutionally immunize the lending functions, or the activities incidental thereto, of federal land banks, from state taxation. It runs in this fashion: Congress has authority to extend immunity only to the governmental functions of the federal land banks; the only governmental functions of the land banks are those performed by acting as depositaries and fiscal agents for the federal government [8] and providing a market for government bonds;[9] all other functions of the land banks are private; petitioner here was engaged in an activity incidental to its business of lending money, an essentially private function; therefore § 26 cannot operate to strike down a sales tax upon purchases made in furtherance of petitioner's lending functions.

---

this amendment. H. Rpt. No. 514, 77th Cong., 1st Sess., p. 2; S. Rpt. No. 292, 77th Cong., 1st Sess., p. 2. See also 87 Cong. Rec. 4255–4256, 4616, 4626–4629 (pamph.).

When Congress moved to avoid the effect of our decision in *Baltimore National Bank* v. *State Tax Commission*, 297 U. S. 209, that the Reconstruction Finance Corporation was taxable on its national bank shares, the committee reports explain that § 10 "was intended to give as wide immunity as possible to the functions and activities of the corporation." H. Rpt. No. 1995, 74th Cong., 2d Sess., pp. 1–2; H. Rpt. No. 2199, 74th Cong., 2d Sess.; S. Rpt. No. 1545, 74th Cong., 2d Sess.

See also the committee report on the Federal Reserve Act, in which the standard exemption clause first appeared, H. Rpt. No. 69, 63d Cong., 1st Sess., p. 39, and the report on the bill creating the Federal Savings and Loan Insurance Corporation. H. Rpt. No. 1922, 73d Cong., 2d Sess., p. 4.

[8] § 6, 39 Stat. 360, 365.
[9] § 5, 39 Stat. 360, 364. § 13, 39 Stat. 360, 372.

The argument that the lending functions of the federal land banks are proprietary rather than governmental misconceives the nature of the federal government with respect to every function which it performs. The federal government is one of delegated powers, and from that it necessarily follows that any constitutional exercise of its delegated powers is governmental. *Graves* v. *New York ex rel. O'Keefe*, 306 U. S. 466, 477. It also follows that, when Congress constitutionally creates a corporation through which the federal government lawfully acts, the activities of such corporation are governmental. *Pittman* v. *Home Owners' Loan Corp.*, 308 U. S. 21, 32; *Graves* v. *New York ex rel. O'Keefe, supra*, 477.

The federal land banks are constitutionally created, *Smith* v. *Kansas City Title & Trust Co.*, 255 U. S. 180, and respondents do not urge otherwise. Through the land banks the federal government makes possible the extension of credit on liberal terms to farm borrowers. As part of their general lending functions, the land banks are authorized to foreclose their mortgages and to purchase the real estate at the resulting sale.[10] They are "instrumentalities of the federal government, engaged in the performance of an important governmental function." *Federal Land Bank* v. *Priddy*, 295 U. S. 229, 231; *Federal Land Bank* v. *Gaines*, 290 U. S. 247, 254. The national farm loan associations,[11] the local co-operative organizations of borrowers through which the land banks make loans to individuals, are also federal instrumentalities. *Knox National Farm Loan Assn.* v. *Phillips*, 300 U. S. 194, 202; *Federal Land Bank* v. *Gaines, supra*, 254.

Congress has the power to protect the instrumentalities which it has constitutionally created. This conclusion follows naturally from the express grant of power to Congress "to make all laws which shall be necessary and proper

---

[10] § 13, 39 Stat. 360, 372.

[11] § 7, 39 Stat. 360, 365.

for carrying into execution all powers vested by the Constitution in the Government of the United States. Const. Art. I, § 8, par. 18." *Pittman* v. *Home Owners' Loan Corp.*, 308 U. S. 21, 33, and cases cited. We have held on three occasions that Congress has authority to prescribe tax immunity for activities connected with, or in furtherance of, the lending functions of federal credit agencies. *Smith* v. *Kansas City Title & Trust Co., supra; Federal Land Bank* v. *Crosland*, 261 U. S. 374; *Pittman* v. *Home Owners' Loan Corp., supra.*[12] The first two of these cases dealt with the very § 26 now in issue. They are conclusive here.

In support of their argument respondents rely on *Smith* v. *Kansas City Title & Trust Co., supra,* and *Federal Land Bank* v. *Priddy, supra.* In the *Smith* case we held that farm loan bonds, which might be secured by first mortgages accumulated in the course of the land banks' lending activities,[13] could be exempted from state taxation. In the *Priddy* case, merely as an aid to the proper construction of § 4 of the Federal Farm Loan Act, giving the land banks the right to sue and be sued "as fully as natural persons," we noted that the land banks possessed some of the characteristics of private business corporations.[14] Their character as federal instrumentalities was specifically affirmed and the broad tax immunity granted to them was not questioned. Manifestly, these cases do not support respondents' constitutional theories.

We cannot accede to the suggestion that the *Smith* and *Crosland* cases can be distinguished, as they were by the state court, on the ground that a sales tax upon purchases made by petitioner in furtherance of its lending functions, unlike the taxes in those cases, bears so remotely upon

[12] See also *Owensboro National Bank* v. *Owensboro*, 173 U. S. 664, 667, 668; *Colorado National Bank* v. *Bedford*, 310 U. S. 41, 50, 51.

[13] § 18, 39 Stat. 360, 375.

[14] See also *R. F. C.* v. *Menihan Corp.*, 312 U. S. 81, 83.

petitioner's functions as to be beyond the power of Congress to prohibit. We have found that the instant tax is within the scope of § 26; and that section is a valid enactment. It is not our function to speculate whether the immunity from one type of tax, as contrasted with another, is wise. That is a question solely for Congress, acting within its constitutional sphere, to determine. *Pittman* v. *Home Owners' Loan Corp., supra,* 33; *Smith* v. *Kansas City Title & Trust Co., supra,* 213.

*Reversed.*

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.