540

**LLOYD et al. v. ROBINSON et al.**
(two cases).

Nos. 332, 336.

United States District Court
D. Montana, Butte Division.

Nov. 10, 1952.

J. F. Emigh, Butte, Mont., for plaintiffs.

Dalton Pierson, U. S. Atty., H. D. Carmichael, Asst. U. S. Atty., and R. Lewis Brown, Jr., Asst. U. S. Atty., all of Butte, Mont., for defendant.

MURRAY, District Judge.

The plaintiffs in Cause No. 332 seek a decree that they are not liable for nor subject to the taxes imposed by Chapter 27A, Subchapters A and B of the Internal Revenue Act of 1951, 26 U.S.C.A. §§ 3285 and 3290, by virtue of operating punchboards, and they also seek a temporary and permanent injunction against the defendant Collector of Internal Revenue enjoining and restraining him from collecting or attempting to collect from plaintiffs the taxes imposed by said sections of the Internal Revenue Code. In Cause No. 336, the plaintiffs Lloyd seek to recover taxes assessed against them by the defendant under Sections 3285 and 3290, and paid by them, and claim for refund for which was filed and denied.

In Cause No. 332, a hearing was had on plaintiffs' motion for preliminary injunction, and at said hearing evidence was introduced by both parties. Thereafter, the parties stipulated to certain additional facts, and further stipulated that both causes be submitted to the Court for final determination upon the evidence so presented at the hearing and in the stipulation.

Section 3285 of the Internal Revenue Act of 1951, insofar as pertinent here, provides:

"§ 3285.  Tax

"(a) Wagers.  There shall be imposed on wagers, as defined in subsection (b), an excise tax equal to 10 per centum of the amount thereof.

"(b) Definitions.  For the purposes of this chapter—

"(1) The term 'wager' means (A) any wager with respect to a sports event or a contest placed with a person engaged in the business of accepting such wagers, (B) any wager placed in a wagering pool with respect to a sports event or a contest, if such pool is conducted for profit, and (C) any wager placed in a lottery conducted for profit.

"(2) The term 'lottery' includes the numbers game, policy, and similar types of wagering.  The term does not include (A) any game of a type in which usually (i) the wagers are placed, (ii) the winners are determined, and (iii) the distribution of prizes or other property is made, in the presence of all persons placing wagers in such game, and (B) any drawing conducted by an organization exempt from tax under section 101, if no part of the net proceeds derived from such drawing inures to the benefit of any private shareholder or individual."

Section 3290 provides:

"A special tax of $50 per year shall be paid by each person who is liable for tax under subchapter A or who is engaged in receiving wagers for or on behalf of any person so liable."

The Internal Revenue Department decided that a punchboard operation constituted a "wager placed in a lottery conducted for profit" within the meaning of Section 3285 above quoted, and assessed and collected the taxes levied by that section and section 3290 from operators of punchboards, including plaintiffs, and these actions were instituted. Plaintiffs do not deny that their punchboards were operated for profit, but insist that their punchboard operations do not constitute wagers within the meaning of the Act.

Plaintiffs' cases rest upon two arguments. First, they contend that the definition of "lottery" as contained in Subsection (b) (2) of Section 3285, limits the meaning of the word "Lottery" for the purposes of this Act, to numbers games, policy and similar types of wagering. They say that the word "includes" in the sentence "The term 'lottery' includes the numbers game, policy, and similar types of wagering", followed by the enumeration of the policy and numbers games, excludes from the meaning of lottery within the Act any type game not similar to numbers or policy games, and that, therefore, punchboards, not being similar to policy or numbers games, are excluded from the Act.

Even aside from numerous cases holding that the use of the term "includes" does not limit the class described to the particular members thereof enumerated as included, see Hiller v. U. S., 2 Cir., 106 F. 73; Federal Land Bank v. Bismark Lumber Co., 314 U.S. 95, 62 S.Ct. 1, 86 L.Ed. 65; Gray v. Powell, 314 U.S. 402, 62 S.Ct. 326, 86 L.Ed. 301, the short answer to this contention of plaintiffs is found in the Internal Revenue Code itself in these words:

"(b) Includes and including. The terms 'includes' and 'including' when used in a definition contained in this title shall not be deemed to exclude other things otherwise within the meaning of the term defined." Sec. 3797(b), Title 26 U.S.C.A.

That punchboards are otherwise within the meaning of the term lottery seems so clear as to scarcely warrant a citation of authority. However, see State ex rel. Harrison v. Deniff, Mont., 245 P.2d 140.

Plaintiffs contend, however, that punchboards are not to be regarded as lotteries for the purposes of this Act because of specific exclusions in the definition of "lottery" contained in the Act itself. The Act provides that the term "lottery" does not include "any game of a type in which usually (i) the wagers are placed, (ii) the winners are determined, and (iii) the distribution of prizes or other property is made, in the presence of all persons placing wagers in such game".

The evidence shows the punchboards operated by plaintiffs are the common ordinary type of boards with which most of us in Montana have become familiar in the last few years. The boards of the plaintiffs varied from those with a hundred punches and one prize to those with 10,000 punches and numerous prizes. Prior to the board being put in play, certain numbers are designated as winning numbers, and a prize assigned to each of the numbers so designated, and when a player punches out one of the numbers designated as a winning number, he receives the prize identified with that number. Players pay to the operator a consideration for the privilege of punching the board, the amount of such consideration per punch being decided upon by the operator prior to putting the board in play upon the basis of the number of punches in the board and the number and value of prizes offered.

Plaintiffs argue that a play on a punchboard, a single punch, is a complete game; that it is in effect a transaction in which the operator bets his prizes which have been set up on the board, against the consideration charged the player for the privilege of punching that the player cannot punch a winning number; that when the punch has been taken, the winner of the bet is determined, and the prize is distributed and the transaction is at an end; that if the player fails to get a winning number,

542

the operator has in effect won the consideration and still owns his prize which he had up as his stake in the bet, and that he may then withdraw the board and prize from play or do what he wills with them. Plaintiffs contend that the puncher and the operator are the only people interested in the particular game represented by the punch, and that the winner is determined, and the prize distributed right at the time in the presence of the only two people who have placed wagers in the game, and that, therefore, punchboard operations fall within the exclusions from the term lottery contained in the act.

The Court is unable to agree with this reasoning as to the effect of a punchboard operation. The Court feels that the entire punchboard is the game; that the operator on the one hand has a continuing wager of his prizes, and that this wager is accepted on the other hand by all those who might play the board during its life, and that it follows that the winners are not determined and the prizes are not distributed in the presence of all persons who have placed wagers in the game. While it may be the operator technically has the right to withdraw a board and its prizes at any time, the evidence shows that this is not usually done. Rather, the board is usually left available to the public for play until all the prizes have been won. The evidence further shows that boards are usually made up with reference to the whole board and based on a scheme or plan, that is, the number and value of prizes is determined by the operator with reference to the total number of punches contained in the board. The number of punches on the total board, the number of prizes, and the value of the prizes all have a direct bearing upon the consideration which the operator charges for a punch.

A look at the Legislative History of the Act in question shows a clear intent on the part of Congress to tax punchboard operations. In the House Report on this Act, this statement is found:

"Among those games which are within the scope of the exclusion would be card games such as draw poker, stud poker, and blackjack, roulette games,

dice games, such as craps, bingo games, and the gambling wheels frequently encountered at country fairs and charity bazaars. On the other hand, punchboards would not normally be excluded under this definition."

A similar statement is found in the Senate Report.