(No. 43141.—

THE FIRST NATIONAL BANK OF MAYWOOD *et al.,* Appellants, *vs.* THEODORE A. JONES, Director of Revenue, *et al.,* Appellees.

*Opinion filed April 1, 1971.—Rehearing denied May 26, 1971.*

KENART M. RAHN, of Chicago, for appellants.

WILLIAM J. SCOTT, Attorney General, of Springfield, (FRANCIS T. CROWE, CALVIN C. CAMPBELL and A. ZOLA GROVES, Assistant Attorneys General, of counsel,) for appellees.

Mr. JUSTICE WARD delivered the opinion of the court:

The plaintiffs, First National Bank of Maywood and National Bank of Austin, both of which are national banking associations created pursuant to the United States Code on Banks and Banking (Title 12, U.S.C. § 21) brought suit in the circuit court of Cook County individually and in a representative capacity on behalf of all other national banks in Illinois similarly situated, against the Director of Revenue of the State of Illinois, the State Treasurer, the Attorney General and various vendors and lessors of tangible personal property to the plaintiffs. The suits, which were consolidated in the circuit court, charged that the plaintiffs were required to pay Illinois use and occupation taxes by reason of unauthorized, illegal and unconstitutional rules and collection procedures initiated and enforced by the defendant Director of Revenue. They alleged that the effect of the enforcement of these rules and procedures has been to tax beyond and in excess of the limited consent given by Congress to the States under Title 12 U.S.C. § 548. Thereby the plaintiffs were and are being deprived, the complaints

said, of constitutional rights assured under the Federal and State constitutions. In an amendment to the complaints the plaintiffs also charged that the taxes imposed upon them violated the Illinois Retailers' Occupation Tax Act (Ill. Rev. Stat. 1967, ch. 120, par. 441) and the "Robinson-Patman Act" (Title 15 U.S.C. § 13). The complaints asked that the Director of Revenue be restrained from collecting occupation and use taxes from the plaintiffs, that the suppliers, *i.e.*, the vendors and lessors, be directed to pay under protest any sums which may be collected from national bank customers in the future, that the suppliers be directed to file claims for refunds of taxes heretofore paid, and the complaints asked that the following tax statutes, *i.e.*, "The Illinois Retailers Occupation Tax Act, Chapter 120, Ill. Rev. Stat., § 440 *et seq.*, Illinois Use Tax Act, Chapter 120, Ill. Rev. Stat., § 439.1 *et seq.*, Illinois Service Occupation Tax Act, 120 Ill. Rev. Stat., § 439.101, *et seq.*, Illinois Service Use Tax Act, Chapter 120, Ill. Rev. Stat., § 439.31, *et seq.*, Illinois Leasing Occupation Tax Act * * *, Chapter 120, Ill. Rev. Stat., § 453.101, *et seq.*, Illinois Leasing Use Tax Act * * *, Chapter 120, Ill. Rev. Stat., § 453.121, *et seq.*, Municipal Retailers Occupation Tax Act, Chapter 24, Ill. Rev. Stat., § 8—11—1, Municipal Service Occupation Tax Act, Chapter 24, Ill. Rev. Stat., § 8—11—5, County Retailer's Occupation Tax Act, Chapter 34, Ill. Rev. Stat. § 409.1, and County Service Occupation Tax Act, Chapter 34, Ill. Rev. Stat., § 409.2," insofar as they apply to the purchases or leases of tangible property by the plaintiffs, be declared unconstitutional. The Director of Revenue filed a motion to strike and dismiss the consolidated complaints, which was sustained by the circuit court and the complaints dismissed. The plaintiffs have appealed to this court since a controversy involving revenue of the State of Illinois is involved and questions under the constitution of the United States and that of the State of Illi-

nois are presented. See Ill. Rev. Stat. 1969, ch. 110A, par. 302(a)(1) and (2).

The plaintiffs argue that they purchased or leased tangible personal property as customers of the defendant suppliers in the State of Illinois and have been required to pay occupation and use taxes in violation of the limited authority to tax given to the States under section 548 of Title 12 on Banks and Banking, (Title 12, U.S.C. § 548). They have been required to pay these taxes because the Use and Occupation Tax Acts, and the interpretation of them by the State, authorizes the supplier to collect any tax due from the purchaser. This has the effect, they contend, of imposing the legal incidence or liability (see *Federal Land Bank of St. Paul* v. *Bismarck Lumber Co.*, 314 U.S. 95, 86 L. Ed. 65, 62 S. Ct. 1; and *First Agricultural National Bank* v. *State Tax Com.*, 353 Mass. 172, 229 N.E.2d 245) for these taxes upon national banks contrary to the holding in *First Agricultural National Bank of Berkshire County* v. *State Tax Com.*, 392 U.S. 339, 20 L. Ed. 2d 1138, 88 S. Ct. 2173. They also again charge that the imposition of these local taxes results in price discrimination in violation of the "Robinson-Patman Act." Title 15 U.S.C. § 13.

In *First Agricultural National Bank of Berkshire County*, the Supreme Court held that where the legal incidence of sales or use taxes would fall upon a national bank as a purchaser, the bank is immune from these taxes because they are not among those which a State was authorized by Congress under section 548 of Title 12 to impose on a national bank. The court said: "The court below held, contrary to appellant's contention, that the Massachusetts sales tax is not imposed upon the bank as a purchaser, but is a tax upon vendors who sell tangible personal property to the bank. Of course if this is true, the bank cannot object if a particular vendor decides to pass the burden of the tax on to it through an increased

price. But if this is not true, and if the tax is on the bank as a purchaser, then, because it is a national bank, appellant is exempt under 12 U.S.C. § 548. * * * And essentially the question for us is: On whom does the incidence of the tax fall?" (392 U.S. 339, 346, 20 L. Ed. 2d 1138, 1143, 1144, 88 S. Ct. 217.) The court determined that the legal incidence of the tax clearly fell on the purchaser, saying: "It would appear to be indisputable that a sales tax which by its terms must be passed on to the purchaser imposes the legal incidence of the tax upon the purchaser. See *Federal Land Bank* v. *Bismarck Lumber Co.,* 314 U.S. 95, 99, 86 L. Ed. 65, 69, 62 S. Ct. 1. Subsection 3 of the Massachusetts sales tax provides: 'Reimbursement for the tax hereby imposed *shall be paid by the purchaser* to the vendor and each vendor in this commonwealth *shall add to the sales price and shall collect from the purchaser the full amount of the tax imposed by this section,* or an amount equal as nearly as possible or practicable to the average equivalent thereof; *and such tax shall be a debt from the purchaser to the vendor,* when so added to the sales price, and shall be recoverable at law in the same manner as other debts.' Acts and Resolves 1966, c. 14, § 1, subsec. 3. (Emphasis added.) This subsection reads to us as a clear requirement that the sales tax be passed on to the purchaser. And this interpretation is reinforced by subsection 23 which prohibits as unlawful advertising the holding out by any vendor that he will assume or absorb the tax on any sale that he may make. We cannot accept the reasoning of the court below that simply because there is no sanction against a vendor who refuses to pass on the tax (assuming this is true), this means the tax is on the vendor. There can be no doubt from the clear wording of the statute that the Massachusetts Legislature intended that this sales tax be passed on to the purchaser. For our purposes, at least, that intent is controlling." 392 U.S. 339, 347, 20 L. Ed. 2d 1138, 1144, 88 S. Ct. 2173.

The Director of Revenue contends that national banks are exempt from both the use tax and retailer's occupation tax in Illinois and that the rules of the Department of Revenue specifically provide for this exemption. Further, unlike the Massachusetts tax considered in *First Agricultural National Bank of Berkshire County,* there are no provisions in the Illinois Retailer's Occupation Tax Act, he says, which direct that the occupation tax must be passed on to the purchaser. The legal incidence or liability for the Illinois Retailer's Occupation Tax Act is placed on the sellers, the defendant suppliers here, and not on the buyers, and thus the statute does not violate section 548 of Title 12 on Banks and Banking. 12 U.S.C. § 548.

The pertinent rules of the Department of Revenue relative to the Use Tax Act and the Retailer's Occupation Tax Act provide:

"7. GOVERNMENTAL BODIES AS BUYERS
[relative to the Use Tax Act]

"The use tax does not apply to purchases by governmental bodies. Effective March 17, 1965, purchases by State chartered banks (but not national banks) and by Federal and State savings and loan associations for use are subject to the use tax."

Rule 16 concerning the Retailers' Occupation Tax Act states:

"1. SALES TO BANKS, ETC.

"Effective March 17, 1965, retail sales to national banks, State chartered banks, Federally chartered savings and loan associations, State chartered savings and loan associations and other privately-owned financial institutions are subject to the retailers' occupation tax. This conclusion also applies to sales of building materials and fixtures to construction contractors for incorporation into real estate owned by banks and savings and loan associations even if such real estate is used for bank or savings and loan association purposes.

For the foregoing purposes, the date of sale is considered to be the date of delivery to the purchaser.

"However, sales to Federal Reserve Banks, Federal Land Banks and Federal Home Loan Banks are exempt from the Retailers' Occupation Tax under the exemption for sales to governmental bodies.

"2. SALES BY BANKS, ETC.

"Because of limitations imposed by Federal statutes, sales by national banks are not subject to Retailers' Occupation Tax. However, State chartered banks and both Federally and State chartered savings and loan associations, which engage in selling tangible personal property at retail are liable for Retailers' Occupation Tax on their receipts from such sales commencing March 17, 1965."

The use and occupation tax statutes do not provide for the taxation of national banks and the rules of the Department make it clear that the plaintiffs were not subject to the taxes imposed by those acts for their purchase and use of tangible personal property. There is nothing to support the plaintiffs' claim that the legal incidence of these taxes is imposed on them.

A related argument of the plaintiffs is that while the statutes may not direct that the seller pass on the occupation tax to the purchaser, the seller in fact, as a practical matter, does pass the tax on to the purchaser. However, the practice does not change the character of the tax. As we stated in *National Bank of Hyde Park* v. *Isaacs*, 27 Ill.2d 205 at 207: "The retailers' occupation tax is levied upon the seller, and the custom of passing the burden to the buyer by means of a price increase does not alter its nature. It is the legal incidence of the tax that controls. (*People ex rel. Holland Coal Co.* v. *Isaacs*, 22 Ill.2d 477, 480-481; *Alabama* v. *King & Boozer* (1941), 314 U.S. 1; *Kern-Limerick, Inc.* v. *Scurlock* (1953), 347 U.S. 110.)"

A similar contention appeared in *National Bank of De-*

*troit* v. *Department of Revenue of the State of Michigan,* 340 Mich. 573, 66 N.W.2d 237, where it was held that under the Michigan sales tax, retail sales of tangible personal property to a national bank were subject to the tax. The Supreme Court of Michigan observed: "Since the legal incidence of the tax does not fall on the purchaser of merchandise but rather on the retailer, such purchaser, in legal contemplation, is not the taxpayer even though the economic burden may be shifted to him." 66 N.W.2d 237, 239.

We cannot perceive any price discrimination in violation of the "Robinson-Patman Act" (15 U.S.C. § 13) as the plaintiffs have charged. In any event, Federal courts would provide the exclusive remedies available for violations, (see *Bruce's Juices* v. *American Can Co.,* 330 U.S. 743, 67 S. Ct. 1015, 91 L. Ed. 1219; *Rubbermaid, Inc.* v. *Claber Distributing Co. of Cleveland,* 3 Ohio, Misc. 39, 205 N.E.2d 410) as a State court would be without jurisdiction. See *Freeman* v. *Bee Machine Co., Inc.,* 319 U.S. 448, 63 S. Ct. 1146, 87 L. Ed. 1509 and *Burgess* v. *Hogan* (La.), 175 So. 2d 924.

For the reasons given, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*