FILED
United States Court of Appeals
Tenth Circuit

March 6, 2024

Christopher M. Wolpert
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT
_____

ANTHONY MARTIN GREEN,

Petitioner - Appellant,

v.

D. HUDSON, Warden,

Respondent - Appellee,

No. 23-3141
(D.C. No. 5:23-CV-03115-JWL)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **KELLY**, and **MORITZ**, Circuit Judges.
_____

This case addresses the use of credits earned by federal prisoners.

These credits can sometimes be used to expedite the prisoner's transition

to prerelease custody or supervised release. But the right to use these

credits depends on the prisoner's classification, and we must decide

---

[*]    Oral argument would not help us decide the appeal, so we have decided the appeal based on the record and the parties' briefs. *See* Fed. R. App. P. 34(a)(2)(C); 10th Cir. R. 34.1(G).

This order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But the order and judgment may be cited for its persuasive value if otherwise appropriate. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

whether the classification of a prisoner violated federal law. We answer *no*.

**1.      This case involves habeas claims challenging a prisoner's classification.**

Mr. Anthony Martin Green is a federal prisoner. While in prison, he has participated in programs, earning 365 days of credits. But to apply these credits toward prerelease custody or supervised release, Mr. Green needed to show eligibility, which requires classification of his risk of recidivism as *minimum* or *low*. 18 U.S.C. § 3624(g)(1)(D)(i)–(ii). The Bureau of Prisons classified Mr. Green's risk as *medium*, and this classification prevented use of the credits to expedite the transition to prerelease custody or supervised release.

Mr. Green disagreed with this classification and sought a writ of habeas corpus in district court. The district court declined to issue the writ and Mr. Green appeals, arguing that the Bureau erred in how it had classified the risk of recidivism.

**2.      Congress directed creation of a system to assess risk.**

Congress directed the Attorney General to create a system to assess the risk of recidivism for prisoners. *See* 18 U.S.C. § 3632(a); Nathan James, Cong. Rsch. Serv., R45558, *The First Step Act of 2018: An Overview* 1 (2019). The Attorney General delegated this responsibility to

the Bureau of Prisons, which created a system called the *Prisoner Assessment Tool Targeting Estimated Risk and Needs*.

This system scores a prisoner's risk based on fourteen criteria. *See* R. at 59 (scoring document used by the Bureau); *see also Male PATTERN Risk Scoring*, Fed. Bureau of Prisons, https://www.bop.gov/inmates/fsa/docs/male_pattern_form.pdf?v=1.3 (last visited Feb. 22, 2024) (same, as located on Bureau website). The score triggers a risk classification of *minimum*, *low*, *medium*, or *high*. *See* 18 U.S.C. § 3632(a)(1); *Cut Points Used for PATTERN v. 1.3*, Fed. Bureau of Prisons, https://www.bop.gov/inmates/fsa/docs/fsa_cut_points.pdf?v=1.3 (last visited Feb. 22, 2024).

**3.    The Bureau didn't err in considering Mr. Green's underlying conviction.**

Mr. Green was convicted of possessing a firearm after a felony conviction. *See* 18 U.S.C. § 922(g)(1). The Bureau regards this crime as *violent*. The crime's classification as *violent* didn't prevent Mr. Green from earning credits. *See* 18 U.S.C. § 3632(d)(4)(D). But the Bureau categorizes the crime as *violent* when assessing an inmate's risk of recidivism. *See Violent Offense Codes for PATTERN Risk Assessment*, Fed. Bureau of Prisons, https://www.bop.gov/inmates/fsa/docs/fsa_pattern_violent_ offense_codes.pdf (last visited Feb. 22, 2024). Mr. Green argues that

3

federal law prevents the Bureau from regarding this crime as *violent* when assessing risk. We disagree.

The Bureau determines eligibility to use credits in two ways: (1) categorically excluding inmates convicted of certain crimes and (2) assessing risk through the fourteen criteria.

The list of excludable crimes doesn't include Mr. Green's crime (possessing a firearm after a felony conviction). *See* 18 U.S.C. § 3632(d)(4)(D). Because many of the excludable crimes are violent, Mr. Green contends that the Bureau shouldn't have regarded his non-excludable crime as *violent* when applying the criteria on risk.

But the Bureau had discretion to consider the crime as *violent*. Federal law contains various provisions involving classification of crimes as *violent*. For example, such a classification can affect consideration of pretrial detention, applicability of a mandatory minimum sentence, and determination of the applicable guideline range for sentencing. *E.g.*, 18 U.S.C. § 3142(f)(1)(A) (pretrial detention); 18 U.S.C. § 924(e)(1) (mandatory minimum of a prison term); U.S.S.G. § 4B1.1(a) (enhancement of the guideline range for sentencing). Unlawful possession of a firearm may be considered *violent* for some purposes and *nonviolent* for other purposes. *See, e.g.*, *Royce v. Hahn*, 151 F.3d 116, 119 (3d Cir. 1998) (discussing the lack of uniformity on what is a *crime of violence*). The

Bureau had discretion to consider unlawful possession of a firearm as *violent* when assessing the risk of recidivism.

Granted, unlawful possession of a firearm didn't prevent offenders like Mr. Green from earning credits. *See* p. 3, above. But Congress determined that offenders could use these credits to transition to prerelease custody or supervised release only when the risk was low enough. *See* Parts 1–2, above. The Bureau viewed unlawful possession of a firearm as a factor bearing on the risk of recidivism. So Mr. Green's eligibility to earn credits didn't prevent the Bureau from upgrading his risk based on the conviction for unlawful possession of a firearm.

**4.     Mr. Green didn't preserve his challenge based on the Administrative Procedure Act.**

Agencies like the Bureau of Prisons can issue legislative regulations, but only at the direction of Congress. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). To issue legislative regulations, agencies like the Bureau of Prisons must ordinarily comply with the Administrative Procedure Act. *See* 5 U.S.C. § 553. Mr. Green invokes this requirement, claiming that the Bureau violated the Administrative Procedure Act when adopting the system of risk assessment. But he did not make this argument in district court.

We ordinarily don't consider new arguments on appeal. *See Havens v. Colo. Dep't of Corr.*, 897 F.3d 1250, 1259–60 (10th Cir. 2018) ("We

ordinarily deem arguments that litigants fail to present before the district court but then subsequently urge on appeal to be forfeited."). We do have discretion to review new arguments under the plain-error standard. *Id.* But we generally don't consider new arguments unless the appellant asks us to apply the plain-error standard. *Id.* at 1260; *see Richison v. Ernest Grp.*, 634 F.3d 1123, 1130–31 (10th Cir. 2011) ("[T]he failure to argue for plain error and its application on appeal—surely marks the end of the road for an argument for reversal not first presented to the district court.").[1]

Mr. Green points to the district court's statement that the Bureau didn't violate "the governing statutes" by deciding "to treat [his] particular offense in a particular way." Dist. Ct. Order at 4.[2] But the district court made this statement when addressing other statutory arguments; the court never mentioned any issues involving the Administrative Procedure Act.

Because Mr. Green did not raise this issue earlier, we decline to consider it.

---

[1]    Mr. Green is proceeding *pro se*, so we liberally construe appellate briefs. *See McKinney v. Okla., Dep't of Human Servs., Shawnee*, 925 F.2d 363, 365 (10th Cir. 1991). But procedural requirements apply equally to *pro se* litigants. *E.g.*, *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840–41 (10th Cir. 2005).

[2]    This order was omitted from the appellate record, but was attached to the government's appellate brief.

**5.    The Bureau could include some factors that wouldn't change.**

Though the Bureau ultimately had the discretion to create a system assessing risk, this discretion was limited. For example, Congress required the Bureau to include factors that could change during imprisonment. 18 U.S.C. § 3632(a)(4). So the Bureau included ten criteria that could change:

1.    Incident reports during the current incarceration,

2.    serious or violent incident reports during the current incarceration,

3.    recency of any incident reports,

4.    number of programs completed,

5.    participation in work programs,

6.    drug treatment while incarcerated,

7.    noncompliance with financial responsibility programming,

8.    recency of violence,

9.    history of escape, and

10.   education.[3]

---

[3]    The parties and the district court referred to eleven changeable criteria, not ten, for a total of fifteen criteria. But the Bureau's system lists only fourteen criteria. *See* R. at 59. The government's brief cites a Department of Justice report, which lists fifteen criteria. *See* U.S. Dep't of Just., *The First Step Act of 2018: Risk and Needs Assessment System - UPDATE* 37–39 (2020), https://www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system-updated.pdf. That report includes a criterion involving the recency of serious violent incident reports. *See id.* at 37. But this criterion doesn't appear in the Bureau's actual list.

R. at 59. But the Bureau also included four criteria that couldn't change:

1.    age at the time of the assessment,

2.    criminal history,

3.    sexual offender status, and

4.    conviction of a "violent offense."

*Id.*

Mr. Green argues that the governing statutes limited the Bureau to dynamic factors. For this argument, Mr. Green relies on the statutory requirement for the Bureau to assess risk "based on factors *including* indicators or progress, and of regression, that are dynamic and that can reasonably be expected to change while in prison." 18 U.S.C. § 3632(a)(4) (emphasis added).

Mr. Green invokes the *negative implication canon*. Under this canon, the mention of particular items can suggest exclusion of others. *Navajo Nation v. Dalley*, 896 F.3d 1196, 1213 (10th Cir. 2018). But the applicability of this canon depends on context. *United States v. Porter*, 745 F.3d 1035, 1046 (10th Cir. 2014). The context here involves a nonexhaustive term, "*including.*" *See Fed. Land Bank of St. Paul v. Bismark Lumber Co.*, 314 U.S. 95, 100 (1941) ("[T]he term 'including' is not one of all-encompassing definition, but connotes simply an illustrative application of the general principle." (citation omitted)); *Porter*, 745 F.3d

8

at 1046–47 (discussing the non-exclusive purpose served by the use of the word *including*). The term implies here that

- some of the criteria must be within the prisoner's ability to change and

- the Bureau is free to use other risk criteria that are not subject to change.

*See* 2A Norman J. Singer, *Statutes and Statutory Construction* § 47:23, at 316 (6th ed. 2000); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 132–33 (2012) (stating that "the word *include* does not ordinarily introduce an exhaustive list").

For example, suppose that a prisoner has a criminal history involving prior convictions for murder. The Bureau wouldn't need to ignore those convictions. The same is true of the conviction underlying Mr. Green's sentence. Though the Bureau had to consider at least some factors within the prisoner's power to change, Congress didn't force the Bureau to blind itself to the obvious risks from convictions for violent offenses.

Mr. Green also argues that the inclusion of static factors denies prisoners "a meaningful opportunity to reduce their classification during the period of incarceration." 18 U.S.C. § 3632(a)(5)(A). But the Bureau combined the four static factors with the ten dynamic factors, and the combination gave inmates an opportunity to lower their scores. This opportunity has proven meaningful for many federal prisoners:

> 99 percent of offenders have the ability to become eligible for early release through the accumulation of earned time credits even though they may not be eligible upon admission to prison. . . . [N]early all have the ability to reduce their risk score to the low risk category.

U.S. Dep't of Just., *The First Step Act of 2018: Risk and Needs Assessment System* 57–58 (2019), https://www.ojp.gov/First-Step-Act-of-2018-Risk-and-Needs-Assessment-System.

Mr. Green's experience reflects the meaningful opportunity for prisoners to lower their scores. Based on the ten dynamic criteria, Mr. Green has lowered his general score by thirteen points and his violent score by six points. *See* R. at 24 (Mr. Green's risk assessment). These reductions have put Mr. Green within three points (in his score for violence) of eligibility to apply his credits. *See Cut Points Used for PATTERN v. 1.3*, Fed. Bureau of Prisons, https://www.bop.gov/inmates/fsa/docs/fsa_cut_points.pdf?v=1.3 (last visited Feb. 22, 2024).

We thus conclude that the Bureau didn't violate federal law by using four static criteria along with the ten criteria that were dynamic.

\* \* \*

We affirm the denial of Mr. Green's request for habeas corpus relief.[4]

Entered for the Court

Robert E. Bacharach
Circuit Judge

---

[4]    We grant Mr. Green's application for leave to proceed in forma pauperis.