(No. 42442.—

Caterpillar Tractor Co., Appellee, *vs.* The Department of Revenue, Appellant.

*Opinion filed Sept. 29, 1970.—Modified on denial of rehearing, January 27, 1971.*

WILLIAM J. SCOTT, Attorney General, of Springfield, (FRANCIS T. CROWE, HERMAN TAVINS, and A. ZOLA GROVES, Assistant Attorneys General, of counsel,) for appellant.

McDERMOTT, WILL & EMERY, of Chicago, (HAMILTON SMITH, JAMES E. BETKE, and WILLIAM G. MIGELY, of counsel,) for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The circuit court of Peoria County reversed a decision of the Department of Revenue and denied the Department's authority to impose a use tax (Ill. Rev. Stat. 1969, ch. 120, par. 439.1 et seq.) on Caterpillar Tractor Company with respect to equipment purchased by Caterpillar in three separate transactions between 1962 and 1967. The revenue and constitutional questions are involved and the Department has appealed directly to this court.

The facts have been stipulated. In the first transaction Caterpillar purchased from Machinery International Inc., an Illinois importer located in Chicago, two drilling machines which were imported from West Germany. The machines were sold F.O.B. Newark, New Jersey, where they were picked up by a common carrier and transported to Caterpillar's plant at Mapleton, Illinois. There the equipment was removed by Caterpillar from the original package in which it was shipped, and thereafter used by Caterpillar for the purpose for which it was intended. After the machines were put to use Caterpillar paid a use tax in the amount of $473.55 directly to the Department of Revenue.

In the second transaction Caterpillar purchased from Kurt Orban, a New Jersey importer, a gear hobbing machine which was also imported from Germany. The equipment cleared customs at the port of New York and was shipped by interstate motor carrier to Caterpillar's plant at

Peoria, Illinois. There the machine was removed by Caterpillar from the original package in which it was shipped and thereafter used by Caterpillar for the purpose for which it was intended. Caterpillar paid a use tax directly to the Department of Revenue in the amount of $2580.38.

In the third transaction Caterpillar purchased from Hawker-Siddeley Ltd. of Toronto, Canada, two turbine test capsules and a combustor. The equipment was shipped by interstate motor carrier from Toronto to Peoria, Illinois, where it cleared customs, and then was transported by Caterpillar to its plant at Mossville, Illinois. There the equipment was removed by Caterpillar from its original package and thereafter used for the purpose for which it was intended. Caterpillar paid a use tax directly to the Department of Revenue in the amount of $2920.87.

On November 9, 1967, Caterpillar filed a claim for credit with the Department of Revenue in the amount of $5,974.80, the aggregate amount of the three tax payments. After a hearing the Department denied Caterpillar's claim in its entirety. The circuit court of Peoria County reversed that determination and ordered that Caterpillar's claim for credit be allowed in full.

With regard to the first two transactions, Caterpillar argues, and the trial court held, that section 3(d) of the Use Tax Act precludes the imposition of a use tax. (Ill. Rev. Stat. 1969, ch. 120, par. 439.3(d).) That section provides: "* * * If the seller of tangible personal property for use would not be taxable under the Retailers' Occupation Tax Act despite all elements of the sale occurring in Illinois, then the tax imposed by this Act shall not apply to the use of such tangible personal property in this State." The trial court predicated its decision upon our opinion in *Miehle Printing Press and Manufacturing Co.* v. *Department of Revenue* (1960), 18 Ill.2d 445. Miehle was a Chicago importer who sold imported printing presses to Illinois customers. The presses were sold in their original packages and

were not opened and put to the use for which they were intended until after their arrival at the customers' plants. We held that the import-export clause in section 10 of article I of the Federal constitution protected Miehle against the imposition of a tax under the Retailers' Occupation Tax Act. (Ill. Rev. Stat. 1969, ch. 120, par. 440 *et seq.*) We pointed out that "The Supreme Court has consistently held that imported articles retain their import status until they are sold, removed from the original package, or put to the use for which they are imported. [Citation.] Although the imports lose their immunity from State taxation after being sold by the importer, that sale or the gross receipts from that sale are not taxable." 18 Ill.2d at 447-48. See *Brown* v. *Maryland* (1827), 12 Wheat. 419, (25 U.S.) 6 L. Ed. 678; *Hooven & Allison Co.* v. *Evatt* (1945), 324 U.S. 652, 89 L. 3d. 1252, 65 S. Ct. 870; *Youngstown Sheet & Tube Co.* v. *Bowers* (1959), 358 U.S. 534, 3 L. Ed. 2d 490, 79 S. Ct. 383.

The trial court held that under our decision in *Miehle* a retailers' occupation tax could not constitutionally be imposed on Machinery International, nor could such a tax be imposed upon Kurt Orban even if all the elements of that sale had occurred in Illinois. Since these transactions would not be taxable under the Retailers' Occupation Tax Act, the court concluded that section 3 of the Use Tax Act exempted them from the imposition of a use tax.

The Department of Revenue, however, contends that this exemption in section 3 was intended only to exempt certain types of transactions from the operation of the use tax, such as isolated or occasional sales or sales incidental to service which are not subject to the retailers' occupation tax even if all elements of the sale occur in Illinois. (See Ill. Rev. Stat. 1969, ch. 120, pars. 440, 440(a).) We agree with this construction.

The Use Tax Act was enacted in 1955 as a complement to the Retailers' Occupation Tax Act, and was intended "to prevent evasion of the tax that applies when retail purchases

are made within the State, and to protect the local retail merchant against diversion of his business to out-of-State sellers." (*Turner* v. *Wright* (1957), 11 Ill.2d 161, 166; Ice, The Retailers' Occupation Tax Act and Related Tax Laws, 1961 U. Ill. L.F. 614, 617.) Since the desire to avoid the retailers' occupation tax and the competitive disadvantage to which it puts Illinois retailers are not present in those isolated or incidental sales which are not subject to the Retailers' Occupation Tax Act, there is no need to impose a corresponding use tax on those transactions. The Use Tax Act recognizes this through the exemption in section 3 for all sales in which "the seller of tangible personal property for use would not be taxable under the Retailers' Occupation Tax Act despite all elements of the sale occurring in Illinois." Ill. Rev. Stat. 1969, ch. 120, par. 439.3(d).

But if the use of imported goods by Illinois users was not subject to the use tax, the tax base of the retailers' occupation tax and the competitive position of Illinois retailers who sell competing goods whose sale is taxable under the Retailers' Occupation Tax Act would be impaired to the extent that Illinois users purchase imported goods. We see no reason to assume that the General Assembly did not intend that the use tax should serve the same purpose with respect to purchases of imported articles as it was intended to perform toward articles purchased out of State which are exempt from the operation of the retailers' occupation tax by the commerce clause of the Federal constitution.

With regard to the Hawker-Siddeley transaction, Caterpillar argues, and the trial court held, that to allow imposition of a use tax would violate the import-export clause of section 10 of article I of the Federal constitution. In this transaction Caterpillar was both the importer and the user of the equipment, and the trial court noted that under the decisions of the Supreme Court of the United States goods imported for use are exempt from State taxation "until they

are sold, removed from the original package, or put to the use for which they are intended." (*Hooven & Allison Co.* v. *Evatt* (1945), 324 U.S. 652, 89 L. Ed. 1252, 65 S. Ct. 870; *Youngstown Sheet & Tube Co.* v. *Bowers* (1959), 358 U.S. 534, 3 L. Ed. 2d 490, 79 S. Ct. 383.) The parties stipulated that after the equipment cleared customs in Peoria and was transported by Caterpillar to Mossville, it "remained in its original package, and was not used for the purpose for which it was intended, until its arrival in Mossville. At Mossville, the equipment was removed by Caterpillar from the original package in which it was shipped, and thereafter used by Caterpillar for the purpose for which it was intended."

Section 2 of the Use Tax Act defines "use" to mean "*. * * the exercise by any person of any right or power over tangible personal property incident to the ownership of that property, * * *." (Ill. Rev. Stat. 1969, ch. 120, par. 439.2.) The trial court reasoned that under section 2 of the Use Tax Act, Caterpillar's liability for a use tax must be determined at the time the equipment crossed the Illinois border, or at the latest, at the time it was delivered to Caterpillar's plant at Mossville, Illinois, since at that time Caterpillar had all of the incidents of ownership. But the equipment was not used until after it was removed from its original package at Mossville. The court concluded, therefore, that a use tax could not be constitutionally imposed because at the latest time the tax could be assessed under section 2 of the Use Tax Act (Ill. Rev. Stat. 1969, ch. 120, par. 439.2), the equipment had not yet been removed from its original package or put to the use for which it was intended. The court found nothing in the Use Tax Act which allowed the Department of Revenue to assess the tax at a later time, and determined that "If such discretion did exist, such would probably be unconstitutional as violating the uniformity in assessment of taxes."

This argument attributes a mystical and unrealistic sig-

nificance to the conceptual notion of an "original package", which, in our opinion, has no place in the practical world of taxation. What form the original packages took does not appear in this record. Nor does this record show the time that elapsed between removing the equipment from its "original packages", whatever they were, and putting the equipment to work. The tax is avoided because the use did not precede unpackaging although the two acts may have been practically simultaneous—with use immediately following removal from the "package."

Whether or not the original package doctrine is applicable in this case, we do not agree that because the import-export clause of the Federal constitution prohibits the imposition of the tax until the goods are removed from their original package, the State is forever barred from imposing a use tax on these articles.

Caterpillar concedes that the Use Tax Act "does not say precisely when the tax is imposed." And here the tax is imposed upon the first use after the goods cease to be imports under the original package doctrine.

The uniformity clause in section 1 of article IX of the State constitution requires only that taxation be uniform among classes and that classes not be drawn arbitrarily. (*Thorpe* v. *Mahin* (1969), 43 Ill.2d 36; *Klein* v. *Hulman* (1966), 34 Ill.2d 343.) We think it is clear that a class which is drawn to prevent an artificial interpretation of the import-export clause from affording imported goods an unintended competitive advantage does not violate the uniformity clause simply because the use tax on imported articles is imposed at a later time than the tax is imposed on non-imported articles.

*Judgment reversed.*