FIRST CHICAGO BUILDING CORPORATION, Plaintiff-Appellee, *v.* THE DEPARTMENT OF REVENUE, Defendant-Appellant.

First District (1st Division)    No. 76-260

Opinion filed May 9, 1977.

William J. Scott, Attorney General, of Chicago (Bonny Sutker Barezky, Assistant Attorney General, of counsel), for appellant.

William A. Cromartie, Robert W. Patterson, Patrick A. Heffernan, and Vincent M. Aquilino, all of Hopkins, Sutter, Mulroy, Davis & Cromartie, of Chicago, for appellee.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Plaintiff-taxpayer, First Chicago Building Corporation (hereinafter the Bank), brought this action in administrative review against an order of the Illinois Department of Revenue which assessed use taxes against the taxpayer in the amount of $537,924.32 plus penalties and interest in the amount of $521,971. The circuit court of Cook County found the Department of Revenue's order to be against the manifest weight of the evidence and contrary to law. The Department of Revenue appeals, arguing that the taxpayer had engaged in tax evasion, and that the trial court incorrectly determined the applicable law.

We affirm.

The record discloses the following pertinent facts, herein summarized. The First National Bank of Chicago, a national banking association, wanted to construct a new facility for its operations. On March 8, 1963, the Bank created a subsidiary corporation, the Madison-Dearborn Corporation, to own, manage and develop real estate. Immediately after the subsidiary corporation was created, the Bank acquired fee interests in half the land to be used for the new Bank building, and the subsidiary

corporation acquired long term leases in the remaining land. The Bank hired an architect to design its new building, and on November 13, 1964, the Bank and its subsidiary entered into an agreement to jointly develop the building property. The Bank leased its fee interests to the subsidiary, and the subsidiary began razing the existing structures. On April 12, 1965, the subsidiary corporation, the Madison-Dearborn Corporation, changed its name to the First Chicago Building Corporation, herein referred to as First Chicago. On September 3, 1965, First Chicago contracted with a general contractor for the actual construction of the proposed bank and office edifice, The One First National Plaza Building. Construction began on March 1, 1966, and was substantially completed on or about December 31, 1969.

The instant dispute is concerned with the process by which building materials were acquired for use in The One First National Plaza Building, as viewed in the context of the applicable laws. During the construction period, an applicable Federal statute (12 U.S.C. §548 (1964)) provided, and the Rules of the Illinois Department of Revenue reflected, that a national banking association was not subject to the Retailers' Occupation Tax Act (ROTA). As explained fully in *First National Bank v. Jones* (1971), 48 Ill. 2d 282, 269 N.E.2d 494, the legal incidence of Illinois ROTA is on the retailer, and not on a purchaser-bank, so that ROTA was not in violation of the Federal law. Should a national banking association make a purchase from an Illinois retailer, the retailer would be liable for ROT, although the retailer would customarily pass the tax burden to the purchaser. If the Bank or First Chicago had purchased the building materials from a retailer subject to ROTA, the amount of ROT would have been passed along to the purchaser. Since, however, at the time of the construction, ROTA did not apply to national banking associations, the Bank purchased the building materials for resale and then sold them to First Chicago at a markup. In this fashion, the Bank was a retailer, but was not subject to ROTA. Section 3 of the Illinois Use Tax Act (UTA) provided:

> "If the seller of tangible personal property for use would not be taxable under the Retailers' Occupation Tax Act despite all elements of the sale occurring in Illinois, then the tax imposed by this Act shall not apply to the use of such tangible personal property in this State." (Ill. Rev. Stat. 1967, ch. 120, par. 439.3.)

First Chicago did not pay the use tax on these purchases because the seller, The First National Bank of Chicago, was not taxable under ROTA, and First Chicago, accordingly, claimed the exemption provided by section 3, above quoted.

The Department of Revenue, however, asserted that First Chicago was liable for use tax for purchases made from The First National Bank of

Chicago, and issued a notice of tax liability to the taxpayer, First Chicago. First Chicago filed a timely protest, and a hearing in the matter was held before a Department of Revenue hearing officer on July 30, 1973. By agreement of the parties, no testimony was taken, and the matter proceeded primarily upon the stipulation of facts. The stipulation of facts consisted of, in great part, the facts herein summarized. Based upon the stipulated facts, the hearing officer found that the taxpayer had a statutory exemption from payment of the use tax, "if one considers the form and ignores substance" and that there was no indication in the stipulation of a valid business purpose served by the arrangement. "In matters of form, Taxpayer appears to have achieved tax exempt status. In matters of substance, Taxpayer is an Illinois user of tangible personal property purchased at retail with the Bank acting as a mere conduit for the principal if not sole purpose of tax evasion." Based upon the hearing officer's findings, the Department of Revenue issued a final assessment.

In an action in administrative review challenging the final assessment, the circuit court of Cook County found that the taxpayer was legally entitled to the exemption provided by section 3 of the UTA, that the business arrangement was structured for the purpose of tax avoidance, and that such tax avoidance is compatible with the law. Judgment was entered in favor of First Chicago, and against the Department of Revenue.

The Department of Revenue's first argument on appeal is that section 3 of the UTA does not exempt First Chicago from Use Tax Act liability. First Chicago argues that section 3 does apply by its stated terms, and furthermore, that Congress intended that such an exemption should occur.

The Department bases its argument upon language in *Caterpillar Tractor Co. v. Department of Revenue* (1970), 47 Ill. 2d 278, 265 N.E.2d 675, where the Illinois Supreme Court, in reference to purchases of imported machinery from an Illinois retailer, stated:

> "Since these transactions would not be taxable under the Retailers' Occupation Tax Act, the [trial] court concluded that section 3 of the Use Tax Act exempted [the taxpayer] from the imposition of a use tax.
>
> The Department of Revenue, however, contends that this exemption in section 3 was intended only to exempt certain types of transactions from the operation of the use tax, such as isolated or occasional sales or sales incidental to service which are not subject to the retailers' occupation tax even if all elements of the sale occur in Illinois. (See Ill. Rev. Stat. 1969, ch. 120, pars. 440, 440(a).) We agree with this construction." (47 Ill. 2d 278, 281, 265 N.E.2d 675, 677.)

The court based its conclusion upon the fact that if the use of imported goods by Illinois residents were not subject to the use tax, the tax base of ROTA and UTA would be impermissibly impaired, contrary to the legislature's intentions. In the case at bar, the Department makes the same argument, that the legislature did not intend in section 3 of the Use Tax Act to diminish the tax base. It is further argued that questions of tax exemptions are to be strictly construed against the taxpayer, and all debatable questions are to be resolved in favor of taxation.

The taxpayer contends, the trial court ruled, and we agree, that the clear language of section 3 of the Use Tax Act is controlling in the case before us. Although *Caterpillar* and related cases operated to preserve the base upon which the UTA and ROTA rest, those cases were decided under factual circumstances which did not involve the operation of the Federal exemption conferred upon national banks. Inasmuch as the Federal statute (12 U.S.C. §548 (1964)) in effect during the construction period exempted the First National Bank of Chicago from ROTA, we hold that the protection afforded by section 3 of UTA was properly invoked by the First Chicago Building Corporation, the taxpayer who used tangible personal property purchased from the Bank. To rule otherwise would, in our opinion, judicially engraft onto section 3 of the UTA a provision that restricted its operation from instances where the seller's exemption from ROTA was created by Federal statute.

The Department's second argument on appeal is that the court should disregard the tax exempt form of the Bank-First Chicago relationship because the transactions were contrived solely for tax evasion purposes; that is, the substance of the transactions is taxable. The trial court found that the taxpayer lawfully avoided the use tax. As was stated in *Burlington Northern, Inc. v. Department of Revenue* (1975), 32 Ill. App. 3d 166, 177, 336 N.E.2d 170, 180:

> "Once again, it must be emphasized that nothing in the revenue statutes prevents a taxpayer from legally minimizing, in contrast to evading, his, her, or its taxes."

The taxpayer-appellee asserts that it properly arranged its affairs under the law to take advantage of the Bank's Federal exemption from ROTA, citing *Federal Reserve Bank v. Commissioner of Corporations & Taxation* (1st Cir. 1975), 520 F.2d 221, where the court held that the Federal Reserve Bank of Boston effectively obtained maximum advantage from the tax exemption extended to it by Congress by tailoring its activities so as to immunize them from the Massachusetts sales tax.

The issue before us is whether the Bank-First Chicago relationship with regard to the sale of building materials was a sham which should be disregarded for purposes of determination of tax liability. The leading case, *Gregory v. Helvering* (1935), 293 U.S. 465, 79 L. Ed. 596, 55 S. Ct.

266, suggests that the question for determination is whether what was done, apart from the tax motive, was the thing which the statute intended. Therein, the taxpayer created a purposeless entity in a desire to avoid taxes. The transactions with the entity were disregarded because, in the court's words, "To hold otherwise would be to exalt artifice above reality and to deprive the statutory provision in question of all serious purpose." (293 U.S. 465, 470, 79 L. Ed. 596, 599, 55 S. Ct. 266, 268.) More recently, the Seventh Circuit succinctly summarized what we believe are the practical considerations in analyzing such an avoidance/evasion case: "The fact that a taxpayer may properly arrange its affairs to minimize taxation does not give it license to create purposeless entities or to engage in transactions with subsidiaries which independent parties would not dream of concluding." *United States Gypsum Co. v. United States* (7th Cir. 1971), 452 F.2d 445, 451.

As we view the facts at bar, the taxpayer and the Bank logically and intelligently arranged their affairs in accordance with the letter and spirit of the law. First Chicago Building Corporation was not a purposeless entity. The Bank dealt with its subsidiary, First Chicago, in a fashion which could be reasonably expected between two independent parties under the statutory climate during the construction period. So long as the Bank was legally exempt from ROTA and it engaged in meaningful transactions with its subsidiary pursuant to the laws which extended an exemption from use tax liability to First Chicago, there is nothing in the law which says that the Department of Revenue may disregard the lawful nature of the transaction by casting aspersions of unlawful tax evasion upon First Chicago. The hearing officer of the Department of Revenue found that the arrangement was one of tax evasion and should be disregarded. The distinguished circuit judge held that the hearing officer's findings were contrary to the manifest weight of the evidence and contrary to the law. We agree.

Finally, the Department contends that the Bank was not exempt from ROTA in these transactions because it acted beyond the scope of its banking powers when it sold the building materials in question, so that First Chicago was not exempt from the Use Tax Act. The circuit court declined to rule on this point, as does this court. If the Department believed in its argument, it should have proceeded against The First National Bank of Chicago. It would be grossly improper for this court to determine the scope of powers of a national banking association upon the record before us, in a case in which The First National Bank of Chicago is not even a party.

In conclusion, in this case of first and last impression, the circuit court of Cook County properly reversed the administrative decision of the Department of Revenue as being contrary to the manifest weight of the

evidence and contrary to the law. The record discloses only a program of tax avoidance within the legal bounds of the Use Tax Act. The judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and BUA, J., concur.